David O. WILTON,
Plaintiff/Respondent,

v.

Clay F. CATES, Defendant/Appellant.

No. WD 41345.

Missouri Court of Appeals,
Western District.

Aug. 8, 1989.

John E. Redmond, Kansas City, for defendant/appellant.

William H. Pickett and Marcia J. Lamkin, William H. Pickett, P.C., Kansas City, for plaintiff/respondent.

Before SHANGLER, P.J., and TURNAGE and KENNEDY, JJ.

TURNAGE, Judge.

David O. Wilton filed suit against Clay F. Cates for false imprisonment. Trial to a jury resulted in a verdict of $1300 actual and $12,500 punitive damages. The court entered judgment on the verdict and Cates now contends that the court erred in giving two instructions; the evidence was insufficient, and that Cates is protected by official immunity. Affirmed.

When Wilton returned home from a trip on September 18, 1981, he found that his bank had returned a $75 check which he had been given with the notation "payment stopped" and "not sufficient funds." Wilton took the check to the prosecutor's office in the courthouse in Independence, arriving there shortly after 8:00 a.m. Nancy Flanigan was behind the counter in the prosecutor's office and was the only office employee present. Wilton spoke with Flanigan about the check and was given a form to complete. Wilton knew the information required except for the birth date of the maker of the check. He testified that Flanigan gave him permission to use the phone on one of the desks behind the counter. He went behind the counter and made a phone call to obtain the information. He stated that he returned to the public side of the counter and told Flanigan that he had the proper information, and handed her the completed form. Wilton said that when he handed Flanigan the form he inquired "What happens next?" He stated that Flanigan lost her temper and yelled at him that she had already told him four times what would happen. Wilton denied that he

had done anything to incite Flanigan's temper.

Wilton testified that after Flanigan yelled at him he told her that he did not come to the office to receive rude treatment but had simply come for help and information. Wilton said that after he made that statement Flanigan, disappeared into an inner office and returned with Cates.

Wilton said that Cates, dressed in a suit and tie, came around the counter, faced him directly, and told Wilton in a very loud voice that Wilton was going to have to get out of there. Wilton responded "What?" and Cates said "Yeah, you are just going to have to get out of here." Wilton asked if he could sit on one of the chairs on the public side of the counter in the prosecutor's office in order to make a complaint against Flanigan for rude conduct. He also asked to speak with a prosecutor about his check. Wilton said that Cates did not let him sit in one of the chairs and told him again that he was going to have to leave. Wilton stated that after he asked Cates if he could sit on one of the benches out in the hall, Cates grabbed him by the left arm so tight that it was painful, and led him out into the hall to one of the benches. Cates thereupon forced Wilton onto the bench and stuck his finger within two or three inches of Wilton's face and said very loudly "Son, you just sit there in that chair and you just keep your mouth shut." Wilton said he looked at Cates and told him that he would sit there but that he did not have to keep his mouth shut because it is a free country. He said that Cates again put his finger close to Wilton's face and repeated the statement about sitting there and keeping his mouth shut.

Wilton said Cates had placed him on the bench next to a man and after Cates had made the two statements, Wilton looked at the man and calmly said it was refreshing to come to the Jackson County Courthouse seeking help and information. Wilton said that after he had made that statement Cates grabbed him by the left arm, forcibly lifted him from the bench and stated "Son you are going to jail." Wilton inquired if

Cates had the power of arrest but he said Cates ignored him. Wilton also asked Cates if he were charged with any crime. Cates again ignored him.

Wilton said that Cates took him to a jail cell located next to the prosecutor's office. Wilton testified that he did not resist the action of Cates in taking him to the cell although he did not want to go. He said that Cates placed him in a cell and shut the door. At that time Wilton called out that he was aware that Cates was depriving him of his liberty and he wanted to see his attorney. He said Cates ignored him.

Wilton testified that he remained in the cell for twenty to thirty minutes before Lee Neegard, an assistant prosecutor, came into the cell to talk with him. Wilton said he asked Neegard if he wanted to hear his version of what had occurred, but Neegard said to save it for his attorney. Wilton inquired of Neegard whether he was charged with any crime and Neegard told him he was not and was free to go.

Wilton denied that he threatened Cates or anyone else, or that he used any loud or profane language, or that he touched anyone, from the time he arrived until Cates first grabbed him.

Neegard, Flanigan and Cates all testified. Flanigan said that Wilton was using loud and profane language, although she could not recall the exact words. She said that she became frightened of Wilton and requested Cates to come in and remove Wilton from the office.

Neegard said that as he got out of the elevator to go to his office he saw Cates talking with Wilton and that both seemed to be talking in loud tones although he did not remember anything that was said.

Cates testified that he was the bailiff for Judge May, an associate circuit judge, whose courtroom was across the hall from the prosecutor's office. Cates said he had not received any formal training for his job which was to keep order in the courtroom, take care of the jury, take care of the prison cell and maintain order in the hall. Cates stated that he went out to talk with Wilton at the request of Flanigan. Cates' version was that he placed Wilton in the

cell only after he had returned to his office and heard Wilton in the hall calling out to people "Am I bothering you?"

■ Cates contends that the court erred in giving Instruction No. 8, submitting the issue of punitive damages, which was in the form of MAI–3rd 10.01 (1983 revision) because there was insufficient evidence to prove that the conduct of Cates was prompted by ill will, spite, or grudge. In reviewing the evidence to determine sufficiency to submit a claim this court must view the evidence in the light most favorable to Wilton, giving him the benefit of all reasonable inferences which may be drawn in support of his cause of action. *Redican v. K Mart Corp,* 734 S.W.2d 864, 868[2] (Mo.App.1987).

Viewing the evidence most favorable to Wilton, the jury could have found that Wilton went to the prosecutor's office and conducted himself in a proper manner, but that Cates came out and grabbed him by his arm forcibly enough to be painful, and took him to a bench in the hall and sat him down. The jury could further believe that Cates placed his finger in Wilton's face and told him to sit there and keep his mouth shut. The jury could further have found that after Cates had told him twice to sit there and keep his mouth shut that Wilton made a statement to a man sitting next to him, and thereafter, Cates grabbed Wilton and told him that he was going to jail. The jury could have found that court was not in session and that Wilton had not been making any loud or disruptive noises. From this evidence the jury could draw the reasonable inference that Cates acted out of ill will, spite or grudge. In short, the evidence favorable to Wilton supported the submission of ill will, spite, or grudge to the jury.

Cates argues the insufficiency of the evidence relying upon his own testimony. As noted, the review is of the evidence most favorable to Wilton, and Cates' evidence is to be excluded except for that portion which supports the verdict. *Kiphart v. Community Fed. Savings & Loan Ass'n,* 729 S.W.2d 510, 515[1] (Mo.App.1987).

Cates further contends that the portion of the instruction taken from MAI–3rd 10.-01 which submitted the question of whether the conduct of Cates was "wilful, wanton or malicious" was erroneous because this constituted a disjunctive submission. The answer to this contention is that MAI–3rd 10.01 required the use of those terms. In *Burnett v. Griffith,* 769 S.W.2d 780, 789[12] (Mo. banc 1989), the court promulgated a new MAI 10.01 which does not use the words "wilful, wanton or malicious" but uses the term "outrageous." However, the court said the new instruction was to be used after that decision. *Id.* at 789. *Burnett* also stated "Lest there be any confusion, in adopting the new instruction we do not overrule cases which have held that punitive damages require a wilful, wanton or malicious culpable mental state." *Id.* It is clear from *Burnett* that the portion of MAI–3rd 10.01 about which Cates complains was required to be used at the time this case was tried in August, 1988.

Instruction No. 8 defined "malicious" in terms of actual malice as approved in *Sanders v. Daniel International Corp.,* 682 S.W.2d 803, 815[10, 11] (Mo. banc 1984). Thus, the jury was required to find that Cates bore actual malice toward Wilton before it could return a verdict for punitive damages. As noted, that definition has been changed by *Burnett* but at the time of this trial the definition of "malice" contained in *Sanders* was the one required. In any event, no point is raised concerning the propriety of the definition of actual malice.

■ Cates contends that he had official immunity because in placing Wilton in the cell he was performing a discretionary act in the exercise of his official duties. No statutory provision has been cited which outlines the duties of a bailiff. The only evidence in this case of the duty of the bailiff were those stated by Cates. There is no contention that Cates had the power of arrest nor is there any suggestion that Cates had any authority to confine a person in the cell without a warrant or other direction from a court or judge. Further,

under Cates' evidence, he was not making any disturbance which would justify Cates in interfering with his liberty in any manner. There is no basis on which to find Cates was protected by official immunity.

Cates also contends that the restraint of Wilton by placing him in the jail cell was not against Wilton's will. This is refuted by the testimony of Wilton when he clearly said that he did not want to be placed in the jail cell.

▮ Cates finally contends that Instruction No. 6 was erroneous because it failed to require a finding of malice on the part of Cates. This instruction was the verdict director on the claim of false imprisonment in the form of MAI–3rd 23.04 (1983 revision) and submitted to the jury that it could return a verdict in favor of Wilton if it found Cates intentionally restrained Wilton against his will. Because the instruction was in MAI it was required to be given. Moreover, it was not necessary for Wilton to prove malice as a part of his false imprisonment claim. *Teel v. May Dep't Stores Co.*, 348 Mo. 696, 155 S.W.2d 74, 77[1–3] (1941).

The judgment is affirmed.

All concur.